1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

    MEDICIS PHARMACEUTICAL CORPORATION,
4   et al.,                                :    CIVIL ACTION NO.
              Plaintiffs,                  :
5                                          :
              v.                           :
6                                          :
    ACTAVIS MID ATLANTIC LLC,              :
7                                          :    11-409-LPS-CJB
              Defendant.                   :
8                              - - -

9                         Wilmington, Delaware
                       Thursday, September 20, 2012
10                       *Telephone Conference*

11                             - - -

12  BEFORE:  HONORABLE **CHRISTOPHER J. BURKE**, U.S. Magistrate Judge

13  APPEARANCES:              - - -

14
                   MORRIS NICHOLS ARSHT & TUNNELL, LLP
15                 BY:  JACK B. BLUMENFELD, ESQ., and
                       JENNIFER YING, ESQ.
16
                       and
17
                   GIBSON DUNN & CRUTCHER
18                 BY:  MICHAEL A. SITZMAN, ESQ., and
                       LAUREN A. EBER, ESQ.
19                     (San Francisco, California)

20                     and

21                 GIBSON DUNN & CRUTCHER
                   BY:  ALEXANDER SWANSON, ESQ.
22                     (Los Angeles, California)

23                     Counsel for Plaintiffs

24
                                  Brian P. Gaffigan
25                                Registered Merit Reporter

```
 1   APPEARANCES:  (Continued)

 2
                   PROCTOR HEYMAN, LLP
 3                 BY:  DOMINICK T. GATTUSO, ESQ.

 4                       and

 5                 ALSTON & BIRD, LLP
                   BY:  JOSEPH J. GLEASON, ESQ.
 6                      (Atlanta, Georgia)

 7                       and

 8                 ALSTON & BIRD
                   BY:  NATALIE C. CLAYTON, ESQ.
 9                      (New York, New York)

10                          Counsel for Defendant

11

12

13

14

15                          - oOo -

16                   P R O C E E D I N G S

17            (REPORTER'S NOTE:  The following telephone

18   conference was held in chambers, beginning at 10:01 a.m.)

19            THE LAW CLERK:  Good morning.  Judge Burke's

20   chambers.

21            MS. YING:  Good morning.  This is Jennifer

22   Ying of Morris Nichols.  I'm calling with regards to the

23   Medicis-Actavis case, 11-409.  We have all counsel on the

24   line for the call.

25            THE LAW CLERK:  Thank you.  Please hold.
```

```
 1                    (Pause.)

 2                    THE COURT:  Good morning, everybody.  This is

 3     Judge Burke.  Could the parties let me know who is on the

 4     line, first for the plaintiffs.

 5                    MS. YING:  Good morning, Judge Burke.  This is

 6     Jennifer Ying from Morris Nichols.  With me on the line

 7     today is Mike Sitzman, Lauren Eber and Alex Swanson, all

 8     from Gibson Dunn.  Mr. Sitzman will be speaking on behalf of

 9     the plaintiff today.

10                    THE COURT:  Good morning to all of you.

11                    MS. EBER:  Good morning.

12                    MR. SITZMAN:  Good morning, Your Honor.

13                    THE COURT:  And who is on the line for the

14     defendant?

15                    MR. GATTUSO:  Good morning, Your Honor.  It's

16     Dominick Gattuso from Proctor Heyman.  I have with me on the

17     line Joe Gleason and Natalie Clayton from Alston & Bird.

18     Ms. Clayton will be speaking on behalf of Actavis.

19                    THE COURT:  Okay.  Good morning to all of you as

20     well.

21                    MR. GLEASON:  Good morning.

22                    THE COURT:  For the record, we're on the

23     record here for a teleconference in the matter of Medicis

24     Pharmaceutical Corporation, et al versus Actavis Mid-Atlantic

25     LLC it's Civil Action No. 11-409-LPS-CJB here in this court.
```

1          We're here on the record today to discuss a

2     discovery-related dispute first raised in a September 14th,

3     2012 letter by the plaintiffs and subject to two additional

4     letters that were filed thereafter.  Because we're on the

5     record today, I have here with me a court reporter from our

6     court who will take down today's call.  I just ask counsel

7     as we discuss the matters at issue if you identify yourself

8     before you speak as you have done already, it will help to

9     ensure a good record of today's call.

10          I have reviewed the materials that you have

11     submitted.  I don't need to hear general argument on them

12     but I have some questions that I would like to ask as a

13     result of them.

14          The first few are to the plaintiff, and these

15     relate to the issue of the 30(b)(6) depositions with respect

16     to the plaintiffs' witnesses.  It relates to the portion of

17     the transcript from the August 29th teleconference that we

18     had on the issue of 30(b)(6) depositions.

19          If you all have a copy of that transcript with

20     you, I'd ask you to turn to pages 6 through 9 of that

21     transcript which is where I'm reading from so that you can

22     follow along.

23          And my question to the plaintiffs is, on pages 6

24     to 7 of that transcript, the defendant, Ms. Clayton speaking

25     for the defendant, is discussing pretty clearly the need to

1    schedule Rule 30(b)(6) depositions for Mr. Andrews and

2    someone who is clearly Ms. Stroehmann, the two witnesses who

3    were originally designated for deposition on August 30th and

4    August 31st and for whom those depositions then had to be

5    moved.

6         Then reacting to Ms. Clayton's reference to

7    those two individuals, I, in turn, ask Mr. Sitzman whether

8    he could schedule the remaining 30(b)(6) depositions by the

9    date on which another witness, Mr. Cooper, was expected to

10   testify.  That was by September 14th.

11        Then Mr. Sitzman, in response, refers back to

12   his letter preceding the call in which the plaintiff stated

13   its belief that the remaining depositions can and should be

14   completed within the next three weeks.  A reference that I

15   think that has to be considered to be a reference to all

16   remaining 30(b)(6) depositions in the case.

17        But then in response, Mr. Sitzman then refers to

18   a different deposition, an outstanding 30(b)(6) deposition

19   of a Dow witness who had not yet been identified, and notes

20   that he would fully expect that that person would be

21   identified before September 14th.  And,

22        Then, lastly, I then say that I'm going to order

23   plaintiffs to produce and identify 30(b)(6) deponents for

24   the remaining topics and to work with Actavis to schedule

25   their deposition before September 14th so that all 30(b)(6)

1    depositions will be presumably completed by then.  Then I

2    say that if all 30(b)(6) depositions cannot be completed

3    by then, the plaintiff will have to seek relief from that

4    order.

5         So with all that as backdrop, Mr. Sitzman, my

6    question to you is:  Is your representation that after

7    getting off that call, you thought that the only remaining

8    30(b)(6) deposition that I had ordered to take place by

9    September 14th was that of the Dow witness?  And, if so,

10   what is the basis for that?

11        MR. SITZMAN:  Thank you, Your Honor.  First of

12   all, I'll represent that without the transcript in front

13   of me, that was my belief.  I believe that even if the

14   transcript reflected, I was talking about the difficulty

15   we were having with that last 30(b)(6) deposition, and that

16   we were working closely with Dow and Valeant to make sure

17   that we got that name, and that we got it completed -- that

18   we got the name, and that we got them identified.

19        Getting off the phone, I believed that the

20   Court's order was that I would identify that remaining

21   30(b)(6) deponent or deponents because those were the only

22   topics for which a deponent had not been identified and to

23   schedule that person or person's deposition before September

24   14th.

25        I will admit though, Your Honor, in looking at

1    the transcript and in going back and forth with Ms. Clayton

2    and Mr. Gleason, what I believed getting off that phone

3    call and looking at the transcript caused me at least some

4    question as to what exactly was ordered.  It was certainly

5    open I think to at least an interpretation as the defendants

6    were arguing.  In fact, Ms. Clayton and I had a lot of

7    conversation about that.

8              The difficulty I had with all of that; if you

9    don't mind, I'll just go forward here; is the following:

10             One is that I still believe, strongly, that

11   the motion to compel, the letter brief that was in front of

12   the Court, the issue that was in front of the Court to be

13   addressed was not the Medicis rescheduling issue.  That

14   issue had arisen on Sunday before the Monday letter went in.

15   That was presumably a reaction by Actavis not to proceed --

16   it was their decision not to proceed with those scheduled

17   depositions.  That was not the subject of their letter.

18             We had been working for weeks to get the Dow

19   deponent identified and had difficulties, as I explained.

20   The only difficulty with regard to the Medicis witnesses was

21   simply one of Actavis's own making.  Namely, the decision

22   not to proceed with those depositions.

23             Nevertheless, I think the communications back

24   and forth very clearly reflect that notwithstanding, we

25   provided the first available date that we could for these

```
 1    people.  It was not as if we were hiding them.  It is not as

 2    if we were secunding them.  It was not as if we were trying

 3    to exact some sort of advantage over the defendants.  We

 4    simply provided the first available date that they could

 5    make it, that we could make it, and that we could get this

 6    underway.

 7            Frankly, we thought, regardless of the

 8    interpretation of the Court's order, the arguments that

 9    could be made, we felt that this was an issue that should

10    have easily been resolved given the scheduling of those

11    deponents on the first available dates.

12            The issue did not unfortunately resolve itself;

13    and we found ourselves in the situation on September 14th

14    of saying to ourselves, well, we either do nothing or we at

15    least send a letter to the Court acknowledging that there

16    is an interpretation that Actavis has advanced; that we don't

17    think that that was the intent of the order but nevertheless

18    we would like relief from the Court so that we can at least

19    move forward with these depositions on the first available

20    dates.

21            THE COURT:  That is another thing.  I mean I

22    will tell you, just so you know, it was my intent, or the

23    intent of that order, on pages 8 and 9 that all remaining

24    30(b)(6) depositions, including the ones Ms. Clayton had

25    specifically referenced just a few seconds before I referred
```

1  to all remaining 30(b)(6) depositions, would be completed by

2  September 14th.

3          I know there is a separate issue you have raised

4  about whether you understood that to be the case.  I will

5  just tell you from my perspective that is what I intended.

6          So then the question is if Ms. Clayton e-mails you

7  on August 31st and tells you that is her interpretation of the

8  order, and you look at it and you think, gees, she could be

9  right, why is it that you wait -- and it's possible you could

10  be under an order then, reasonable reading of an order, that

11  requires you to finish all 30(b)(6) depositions by September

12  14th.  Why do you wait until September 14th to send the letter?

13  Why don't you communicate with the Court earlier than that

14  such that it doesn't look like you are running out the clock

15  on that order?  That's another question I have.

16          MR. SITZMAN:  No, no, no.  That's a good

17  question, Your Honor.  I felt, and I think it's attached

18  to probably both of our letters, that the back-and-forth

19  e-mails which were fairly frequent -- they were, my

20  recollection is they were daily, if not every other day,

21  back and forth -- that, again, that this was an issue that

22  didn't need Court intervention.  That regardless of anybody's

23  interpretation, at the end of the day, these deponents were

24  not available.

25          I do want to speak to that issue real quickly,

1   because that also informs, I think it informs and at least

2   reflects what my belief was.  At the time of the hearing, I

3   did not know what the next availability was of these Medicis

4   deponents, I was just told that Actavis would not proceed with

5   them, whereas, for example, the Dow and Valeant witness, I was

6   involved two or three weeks prior to that, making clear that

7   we needed an immediate designee and we needed to get somebody

8   right away, and all of those pressure points.  I did not.

9   have -- I just had no way of representing to the Court any

10  reasonable belief as to the Medicis deponents.  I just didn't

11  know.

12          That's not a direct answer to your question but

13  the point there is I guess this:  That the communications

14  back and forth between the plaintiffs and the defendant by

15  e-mail, while it didn't involve the Court, I believed strongly

16  would resolve itself and did not need Court intervention and

17  not that it was going to run out the clock but that I could

18  not provide them with any other relief.

19          My feeling was that at that point, we could

20  either take them on October 3rd and 5th or we're going to

21  have to get Court intervention to order them.  And I just

22  could not -- I just couldn't believe this could not be

23  resolved without Court intervention.

24          Candidly, I wound up on September 14th with an

25  impasse and launched the letter at the last minute.

```
 1                THE COURT:  To give you an idea of how this kind
 2    of happens, Ms. Clayton e-mails you on August 31st and says
 3    basically straight out, the Court ordered that
 4    Ms. Stroehmann and Mr. Andrews, among other deponents, be
 5    deposed by September 14th.
 6                You e-mail back on September 5th, six days later,
 7    and you ignore that and say:  Mr. Andrews is available
 8    October 3rd and Ms. Stroehmann is available on October 5th.
 9    Both depositions will take place in Phoenix.
10                So if the idea is that we're going to try to
11    resolve this issue about whether or not these depositions
12    have to take place by September 14th, how does an e-mail
13    response like that go to trying to work that issue out well
14    in advance of what could be a deadline?  That's the problem
15    that I have with the timeliness issue.
16                MR. SITZMAN:  I understand objectively how this
17    may look to the Court.  I can only tell you that over the
18    Labor Day weekend, that that dialog took place in trying
19    to get dates from these two individuals, both of whom are
20    integral to the company.  And one of the reasons why neither
21    one of them had availability at the end of this month to
22    get this on is that they were both tied up in a transaction
23    right now.
24                I thought that I provided the available dates.
25    I wanted her to have those.  We were also simultaneous
```

1    working on Ms. Graf, the Dow deponent.

2           Again, maybe it was my miscalculation both in

3    terms of interpreting the Court's order and my miscalculation

4    in my expectations of opposing counsel in terms of providing

5    available dates and understanding that witnesses have

6    availabilities and they don't have availabilities.  When

7    Actavis decided unilaterally not to proceed, it just seemed to

8    me, again, given my misapprehension I guess about the Court's

9    intention, that the first available dates ought to suffice,

10   and if those don't work I'm happy to look for more.

11          THE COURT:  The point there is, obviously, the

12   case is a contentious one in the sense we've had a lot of

13   discovery disputes.  If the idea is not to burden the Court

14   with those disputes, the only way that is going to happen

15   is if there is a substantive back-and-forth between counsel

16   about the issues that they raise.  What I'm saying is that

17   when this issue was raised just two days after our call by

18   Ms. Clayton, the only way that is going to get resolved is

19   if there is an engagement.  Your e-mail back didn't suggest

20   an engagement on the deadline issue.  That is what gives me

21   pause.  And,

22          It leads to my last question of you, which is,

23   we've got these two witnesses, Mr. Andrews and Ms. Stroehmann.

24   I told you at least my objective view of my order was that

25   their depositions be completed by the 14th.

1          Now, obviously the 14th has passed, and you

2     responded by saying they are not available until October 3rd

3     and 5th.  What I want to do is, obviously you knew this was

4     going to be an issue on the call.  I want to go through with

5     you exactly why it is they're not available from today's date

6     until October 3rd, what the reasons for their unavailability

7     is, and whether it's -- my hope would be, coming into the

8     call, that there would have been some discussion with them

9     about whether in fact, looking at things again, there was

10    availability earlier than those dates, some time between

11    today's date and the 3rd and the 5th.

12         So my question to you is what is the reason for

13    their unavailability in the intervening time?  And, having

14    seen the objection lodged, is there an offer to produce

15    those witnesses earlier than October 3rd or 5th, some other

16    dates prior to that?

17         MR. SITZMAN:  Let me start off with an apology,

18    Your Honor.  This is part of the problem.  I'm actually

19    calling in from Europe.  I'm not in the States.  I don't

20    have all of my papers with me.  This was an important call.

21    I wanted to make sure I took it.  I will not be back in the

22    States until Monday night.

23         I can tell you what I recall, and I can offer to

24    the Court that I'm willing to do whatever is necessary, but

25    let me at least get out what I recall.

1          One is that Ms. Stroehmann, who has been designated

2     on the FDA-related topics, is head of that registration

3     department.  She is tied up both in D.C. and in Arizona with

4     a new regulatory filing.  She asked me specifically not to

5     interrupt that schedule so that she could complete all of

6     her filings, and that she had various days in and out of

7     Phoenix and in and out of D.C. in order to complete all of

8     those filings.

9          I believe that the first week in October, she

10    had various availabilities.  There may have been -- and

11    I'll offer this.  There may have been a singular date in

12    September that she was available, but beyond that, there was

13    really no other opportunity that at least I saw.  And I want

14    to come back to that one date for a second in just a moment.

15         Mr. Andrews is the corporate -- I can't remember

16    his official title.  I apologize.  But he is the corporate

17    spokesperson for the company.  He is the guy that provides all

18    of the corporate information and the shareholder information,

19    et cetera.

20         The company is currently involved in a major

21    hostile takeover.  It is not a very easy time for the company.

22    He is very, very busy, and has been.  He was available at

23    the end of August and had flexibility beyond that until the

24    shareholder derivative suits and the like started flying

25    back and forth, and his days are currently consumed with all

1    of that.

2              The first available date that I gave coincided

3    not only with what I thought was the first available dates

4    for the witnesses but two other important things.  One is,

5    is that since they were going to take place in Phoenix, I

6    thought it was better to put them together rather than offer

7    the one date in late September that Diane Stroehmann was

8    available.  I thought it was better to put them together.

9    No. 1.

10             No. 2.  I am the chief counsel in terms of

11   handling the Medicis witnesses.  As you know, I've been

12   quite involved in this case.  I have, as you can tell by the

13   phone call, an incredibly difficult travel schedule.  I had

14   to make two board meetings here in Europe.  I had to leave the

15   country actually just after the Cooper deposition on Friday.

16   I'm here and I won't be back until Monday night.  Then comes

17   the remaining Jewish holidays which takes me out of the

18   picture and most of my team as well.

19             Putting all of those pieces together, and going

20   just by recollection, Your Honor, I think that we provided

21   what was the first available dates for these witnesses save

22   for that one date that I cannot recall for Diane Stroehmann

23   in a manner in which I thought was convenient for Actavis

24   and its counsel who had to fly out to Phoenix and also for

25   the availability of myself, Your Honor, to defend the

1    depositions.

2                THE COURT:  Let me just ask Mr. Gleason on

3    behalf of Actavis two questions.  One.  Am I right that a

4    portion of the relief you are seeking is that you would

5    like these two depositions to occur on dates earlier than

6    October 3rd and 5th, respectively?  In other words, is that

7    a benefit to you?  And,

8                I guess the related question there is, would it

9    be more beneficial to you to have those taken together, i.e.,

10   back-to-back dates or, as Mr. Sitzman kind of suggested,

11   is the benefit of doing them earlier worth doing them

12   individually, if need be?

13               MR. GLEASON:  Your Honor, I think at this

14   point -- well, I think at this point that we would prefer to

15   do them together.

16               THE COURT:  I guess maybe a related question is,

17   the backstop is October 3rd and 5th.  That's the dates that

18   Mr. Sitzman has proposed.  I understand your concern with

19   respect to the Court's prior order and the way in which

20   the plaintiff went about responding to it; and I know you

21   requested a sanction with respect to that.

22               Separate and apart from that, though, from just

23   looking at these depositions, and we know they need to occur

24   and you want them to occur, is your preference sitting here

25   today that they occur on October 3rd and 5th or is your

1    preference that they occur some time before then?

2              MR. GLEASON:  Your Honor, I would prefer that

3    the depositions occur some time next week.  I'm sympathetic

4    to the scheduling problems of the witnesses.  I'm frankly

5    less sympathetic to the scheduling problems of counsel

6    because there are a lot of lawyers on both sides here.  But

7    I recognize that, with the backstop of October 3rd and 5th,

8    I mean at some point you are talking about a marginal

9    benefit to getting the depositions a week earlier.

10              I would say if we're going to leave the

11   depositions on October 3rd and 5th, first, that I think some

12   sanction has to be made here.  And, second, that I would ask

13   the Court in advance to be somewhat sympathetic to Actavis's

14   position if, as a result of those depositions, we need

15   additional discovery.

16              THE COURT:  And then --

17              MR. SITZMAN:  Your Honor?  I'm sorry.

18              THE COURT:  Mr. Sitzman, I'm sorry.  I'm not

19   finished asking questions to Mr. Gleason.

20              One other question for you, Mr. Gleason, which

21   is, and maybe you kind of implicitly answered this.  Can

22   you articulate any prejudice that you will have suffered, at

23   least at this stage, sitting here right now, based on the

24   fact that, for example, you might not take these depositions

25   until October 3rd and 5th as opposed to in an imaginary

1   world in which you would have taken them prior to September

2   14th?  Have you yet suffered any prejudice?

3           MR. GLEASON:  Well, the prejudice that we have

4   suffered would largely be follow-on discovery that would

5   have been taken as a result of these depositions.  I frankly

6   can't know what prejudice I have suffered until I take the

7   depositions.

8           THE COURT:  I understand.  Mr. Sitzman, I'll

9   give you a chance just to add something briefly.

10          MR. SITZMAN:  Yes.  By the way, let me apologize

11  for interrupting there.  It was just something that occurred

12  to me.

13          In one of the meets and confers I had with Ms.

14  Clayton on this very issue in addressing this last issue

15  that you raised, I had told Ms. Clayton, and I stand by it,

16  and plaintiffs stand by it, which is the following:

17          Recognizing that these witnesses could not be

18  deposed earlier, that we would not stand in their way if there

19  was some reason that something came out of the depositions or

20  there was some issue that arose that they raised, and that

21  as a result of the depositions not occurring before September

22  14th and only occurring on October 3rd and 5th, that they

23  needed whatever that additional time was or they needed what-

24  ever, whatever the quid pro quo was that related to that had

25  some tie to this rescheduling of depositions, that we would be

1    more than happy to accommodate them on that issue.

2              I stand by that then, I stand by that today and

3    make that representation to the Court, if that helps, Your

4    Honor.

5              THE COURT:  Let me just say a couple things.

6    The first is obviously I told you that my subjective intent

7    was that the depositions be completed by September 14th.  I

8    think a fair reading of the transcript would have suggested

9    that.

10             What is of concern to me is -- well, stepping

11   back.  With respect to a request for sanctions, it's not to

12   say that sanctions could not be appropriate in a case like

13   this with respect to discovery violations.  As a court, I

14   have to be mindful that that is a significant movement.  It's

15   a significant issue, and it's one in which I am hesitant to

16   take unless there is not only a clear record of misconduct

17   but also where the order itself, the violation of which

18   would give rise to a sanction is crystal clear.

19             As I said, I think the transcript of the August

20   29th teleconference we had should lead somebody to believe

21   that all those depositions would have taken place by

22   September 14th, but I will at least acknowledge on an

23   important issue like issuing a sanction, there is at least

24   some arguable wiggle room there in which I'll allow maybe

25   for the good faith misunderstanding of what that order

1     represented.  With that, I'm not comfortable issuing a

2     sanction for the violation of that order, but I did intend

3     that.

4              Also, the other thing that troubles me is if

5     that is even potentially the case, and you are facing an

6     order that requires you to do something by September 14th,

7     the onus is on you to do everything you can to resolve that

8     issue.  And if you can't, then raise it with the Court

9     earlier than that day.

10             So I'm not going to issue a sanction with respect

11    to that violation, but because of what I just described,

12    I'm very sympathetic to the defendant's perspective.  If I

13    thought that pushing to have the depositions moved up would be

14    significantly helpful to the defendant, I would do everything

15    that I could in my power to make that happen.  I hear Mr.

16    Gleason telling me today, you know, maybe softly but saying in

17    essence that the marginal benefit of that is not great.

18              I want to make sure these depositions happen.  So

19    I'm going to order that these take place on October 3rd and

20    5th, as has been proposed.

21             That said, I would expect that the plaintiff

22    would, as Mr. Sitzman has offered, provide any assistance to

23    the defendant that is needed as a result of this scheduling

24    difficulty.

25              Also, as Mr. Gleason has asked for, I will be

1   sympathetic to any issue arising out of those depositions that

2   Mr. Gleason can point to being related to the fact that they

3   take place later than I would have otherwise ordered them,

4   including if there are any discovery-related issues that arise

5   out of them.

6           That is the best I feel like I can do now at

7   this stage with respect to those two depositions.  It's what

8   I will keep in my mind going forward.

9           So with respect to Mr. Andrews and Ms. Stroehmann's

10  depositions, I expect they will take place on October 3rd

11  and 5th, as I have stated.

12          With respect to the issues about deposition

13  misconduct, I'm not going to litigate all those now.  They

14  were raised in the end of a responsive letter to the

15  plaintiffs' letter.  I've reviewed the transcripts.

16          I guess, Mr. Sitzman, my question for you is:

17  The defendants have raised a number of different situations

18  in which they believe you improperly instructed a witness

19  not to answer.  If I'm looking at the issue of relevancy and

20  the issue of beyond the scope of deposition topics, what is

21  the basis to instruct a witness not to answer on the ground

22  of relevancy or that the questions are beyond the scope of

23  deposition topics?

24          MR. SITZMAN:  Your Honor, on the issue of

25  relevancy, first of all -- and I'd like to have, I think we

1    should probably have a specific question and answer in front

2    of us.  But I think I generally know what you are referring

3    to.

4              The instructions that I gave, that related to

5    or appeared to be of relevancy related to proprietary trade

6    secret information, such as the request that the witness

7    reveal the redacted information about a proprietary product

8    under development.  That he reveal the confidential settlement

9    terms of an employment dispute with somebody who is not a

10   part of the litigation, who is under a court order to keep

11   all that information confidential.

12             It seems to me that in those circumstances, given

13   the request that the witness respond and either breach his

14   obligations or divulge proprietary trade secret information,

15   in those circumstances, I believe, while they're not privileged

16   information, they come within at least the scope I think of

17   Rule 30(c).

18             I have had that discussion -- you probably can

19   read it on the record -- with counsel that when forced to

20   choose between suspending the deposition or instructing the

21   witness, in several instances I have told counsel that I

22   have done that so he can complete his deposition and we

23   could, if that issue is an important issue, we will brief

24   it for the Court and have it.

25             But the only other option is to suspend the

1    deposition and move for a Rule 30(d) protective order.  In

2    certain circumstances, I gave counsel the choice to make

3    that decision, you know, what he would like me to do given

4    the situation.

5           The other topic that you raised, which was out-

6    side the scope, there is admittedly one instance in which I

7    instructed not to answer because it was outside the scope of

8    the 30(b)(6) deposition.  That was an improper instruction,

9    and I admit that.  That was an improper instruction.

10          It comes in the context of a very, very long

11   and contentious deposition.  You have seen the end of that

12   transcript where we did ultimately suspend the deposition.

13   I actually tried to call you during the early part of the

14   deposition concerning the conduct and ultimately suspended

15   the deposition to move for a Rule 30(d) protective order for

16   this witness.

17          During the course of that contentious

18   deposition, there was one instance in which I instructed not

19   to answer because it was outside the scope of the 30(b)(6)

20   deposition.  That was an improper instruction on my part.

21          THE COURT:  Okay.  Look, there are going to be

22   some additional depositions taken.  Here is what I want to

23   say about deposition conduct.  I think defendant raised a

24   few issues in this letter.  Again, it's raised in an unusual

25   way in response to a letter by plaintiff.

1          I'm going to take that letter as raising some

2     issues that they are concerned about.  I will address them

3     briefly now, and then I will suggest a way that I can be

4     more involved in this process, if I need to be.

5          That is, it's not proper to make speaking

6     objections.  It's not proper to instruct a witness not to

7     answer solely on relevance grounds, as I understand it.

8     It's not proper to instruct a witness not to answer on the

9     grounds that topics are outside the scope, for example, or

10    that questions are outside the scope of topics for a

11    30(b)(6) deposition.

12         It's proper to object.  It's proper, if

13    necessary, to seek the Court's involvement.  If the Court is

14    not available, and I apologize that I was out of town on the

15    day of at least one of these depositions, then you have made

16    the record and you can always take further action afterwards

17    but the deposition goes on.

18         Look, I think it is arguable that if a

19    confidentiality order in another matter restricts the

20    witness's ability to disclose certain information, that

21    one could instruct not to answer.  Again, that is an issue

22    probably that would need to be addressed both by counsel

23    and then potentially with the Court if it happens again,

24    and privilege issues obviously are in a different boat.

25         So I would ask counsel to keep those general

1    parameters in mind as we go forward with the remaining

2    depositions in this case.

3            Also, what I'm going to ask counsel for the

4    plaintiff to do, on behalf of both parties, is to inform the

5    Court by letter as to the dates of the remaining depositions

6    before the end of the discovery period so I can know exactly

7    when those are and I can make sure I'm available by phone if

8    any issues arise during those depositions.  So I will ask

9    you to do that going forward.

10           Lastly, I would say that in reading the tran-

11   scripts, it's pretty clear to me that these are contentious

12   depositions.  I say that both ways.  And in reading them, I'm

13   just telling you it's not doing you or your clients a service

14   when you can get a sense of the tenor of what is going on here

15   from these transcripts in terms of the words used and also

16   just the general level of acrimony.

17           So what I expect, what I will ask counsel and what

18   I will expect going forward with the remaining depositions is

19   that counsel will do everything possible, to the extent there

20   are differences of opinion or objections, to resolve them in

21   a non-argumentative, non-acrimonious way.  And to the extent

22   that I can get the sense that's not happening, I will take

23   that into account, if I have to, in the few future, but I

24   would ask counsel to keep that in mind as we try to get

25   through the remaining depositions in this case.

```
 1              So with all that said, I am not going to take

 2      any further action with respect to the letter briefs here.

 3              Understanding the ruling that I have made on the

 4      first issue and my comments, is there anything that I have

 5      said that is unclear from the plaintiffs' perspective,

 6      Mr. Sitzman?

 7              MR. SITZMAN:  No, Your Honor.

 8              THE COURT:  Okay.  From the defendant's

 9      perspective, Mr. Gleason?

10              MR. GLEASON:  No, Your Honor.

11              THE COURT:  Okay.  Thank you all.

12              The last thing I wanted to ask you about before

13      we get off the phone is I think it's at least outstanding

14      whether or not there is a joint request from the parties to

15      schedule a date for mediation.  I think my courtroom deputy

16      had told me we had reserved a date, but I think at least on

17      the defendant's part, if I'm remembering correctly, it was

18      not certain whether the defendant said, had stated that it

19      wished to go forward with a mediation on the date that we

20      had reserved.

21              Mr. Gleason, can you give me any kind of an

22      update as to what Actavis's position is as to whether or not

23      it is interested in mediation at this stage?

24              MR. GLEASON:  Your Honor, we heard that from your

25      clerk yesterday.  We reached out to our client.  We don't
```

1    have an answer yet but I believe the parties are prepared to

2    address additional discovery disputes on September 28th, and

3    I expect we will have an answer for the Court by that time.

4              THE COURT:  Okay.  I appreciate that.  I will

5    look for it then.  With that, I look forward to speaking to

6    you soon in this case, and I wish everyone a good week and a

7    good weekend.  Take care, everybody.

8              MR. GLEASON:  Thanks.

9              MR. SITZMAN:  Thank you.

10             (Telephone conference ends at 10:40 a.m.)

11

12        I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

13

14                        /s/ Brian P. Gaffigan
                        Official Court Reporter
15                        U.S. District Court

16

17

18

19

20

21

22

23

24

25